OPINION OF THE COURT
John A. Fusco, S.
*329 In this pending proceeding, Mental Hygiene Legal Service (MHLS), acting on behalf of M.B., a mentally retarded person, seeks an order determining that SCPA 1750 and 1750-b may not be applied retroactively, so that R.B., the brother and guardian of the person of M.B., does not currently possess the authority to direct the withdrawal of life-sustaining treatment from M.B. M.B. is a 42-year-old mentally retarded person, currently hospitalized and suffering from pneumonia, hypertension and hypoxia. It is the opinion of M.B.’s physicians that his medical condition is irreversible and terminal. M.B. is on a respirator and receives nutrition and hydration through a nasogastric tube.
R.B.’s authority as guardian of the person was conferred by an amended decree dated January 24, 2003, prior to the effective date of the recently amended statute, known as the Health Care Decisions Act. MHLS contends that the authority conferred upon the guardian by virtue of the amended decree provided general guardianship authority, without specifically providing the guardian with the authority to make decisions pertaining to the withdrawal of life-sustaining treatment. They, therefore, seek an order specifically authorizing the guardian to direct the removal of M.B.’s hfe-sustaining treatment.
It must be noted that everyone involved in this proceeding, including MHLS and M.B.’s physicians, agree that it would be in M.B.’s best interests to remove M.B. from the respirator and all other life-sustaining treatment. The objection of MHLS is based solely on its opinion that SCPA 1750 and 1750-b are not to be applied retroactively, and that the guardian, therefore, has no authority to direct M.B.’s removal from hfe-sustaining treatment without the court now extending his authority to specifically include the power granted by SCPA 1750 and 1750-b. Furthermore, MHLS contends that, inasmuch as SCPA 1750 and 1750-b do not apply, this court must rely on the mandate of the Court of Appeals as set forth in 1981 in Matter of Storar (52 NY2d 363 [1981]), wherein the Court held that since the retarded person could not express his wishes as to the continuing of hfe-sustaining treatment, the guardian standing in his shoes cannot now do so.
Health Care Decisions Act (SCPA) §§ 1750 and 1750-b regarding the authority of guardians to make health care decisions for mentally retarded persons were enacted in 2002, but did not become effective until March 17, 2003, subsequent to the appointment of R.B. as guardian herein. Counsel for the *330 guardian contends that the new law applies even to guardians appointed prior to the effective date of the statute. He maintains, therefore, that R.B. is indeed empowered by SCPA 1750 and 1750-b to make all health care decisions for his ward, including the termination of life-sustaining treatment, when in the best interests of the mentally retarded person.
Undeniably, SCPA 1750 provides that when a court appoints a guardian subsequent to March 16, 2003, the application shall include a specific determination made by two qualified health care professionals as to whether the mentally retarded person has the mental capacity to make health care decisions. Parenthetically, R.B.’s petition, although made prior to March 16, 2003, included a specific determination from two health care professionals that M.B. lacked the mental capacity to make health care decisions.
Nevertheless, the last sentence of SCPA 1750 (2) provides that the absence of such a determination in a case where the guardian was appointed prior to March 17, 2003 “shall not preclude such guardians from making health care decisions.” Indeed, SCPA 1750-b unequivocally states that guardians shall have authority to make health care decisions, unless specifically prohibited by the court, after consideration of the SCPA 1750 determination, if any. The expression “if any” contemplates a situation where a guardian would have health care decision making authority, even in the absence of the SCPA 1750 determination. The statute further provides that such health care decisions “may include decisions to withhold or withdraw life-sustaining treatment.” (SCPA 1750-b [1].) Clearly then, SCPA 1750 and 1750-b as amended apply to guardians appointed prior to March 17, 2003, and R.B. as guardian of M.B. is clothed with all the statutory powers provided to guardians under the new Health Care Decisions Act.
Furthermore, the reliance by MHLS on Matter of Storar is misguided inasmuch as a careful reading of that decision leads the court to conclude that Storar does not apply to the case at bar.
In Storar there was no evidence of the patient’s wishes as to the continuation of life-sustaining treatment, nor could there be because of the patient’s life long retardation. “However, the fact that the [C]ourt [of Appeals] did not permit the mother to withhold transfusions should not be interpreted as foreclosing the possibility of humane actions through surrogate decision-making which may involve withholding life-prolonging treat *331 ment for persons who never spoke on the issue” (Matter of Beth Israel Med. Ctr., 136 Misc 2d 931, 937 [1987]).
Indeed, it is inconceivable that complete foreclosure was intended by the Court of Appeals, as it was careful to state that “any guidance we may provide for future cases is necessarily limited . . . Our [the Court’s] role ... is limited to resolving the issues raised by the facts presented in particular cases” (Matter of Storar, 52 NY2d 363, 370 [1981]).
Here, unlike the patient John Storar, it is undisputed that M.B. would derive no benefit from having his life prolonged through life-sustaining treatment because of his irreversible vegetative state. Further, unlike in Storar, where the physicians recommended treatment which was refused by the mother, in the case of M.B., his physicians, the hospital, M.B.’s guardian and family, and even MHLS, all concur that the continuation of life-sustaining treatment is not in M.B.’s best interests.
Accordingly, for all of the reasons set forth herein, this court determines that the recently enacted Health Care Decisions Act applies to all guardians, whether appointed before or after its effective date of March 17, 2003, and R.B., as guardian of M.B., is granted all of the powers provided in that statute.